**VALERO REFINING–TEXAS L.P., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–05–00455–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 21, 2006.

Mark Landymore Farley, Houston, for appellant.

Roger A. Haseman, Houston, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Valero Refining–Texas, L.P., pleaded no contest to the misdemeanor offense of unauthorized discharge under section 7.147 of the Texas Water Code. In one issue, appellant contends that the trial court erred by failing to grant its motion to quash the information. Because all dispositive issues are clearly settled in law, we issue this memorandum opinion and affirm. *See* Tex.R.App. P. 47.4.

### I. Background

Appellant was charged by information with unauthorized discharge. The language in the information tracked the language in section 7.147 of the Texas Water Code. The former version of section 7.147 applicable to this case provided as follows:

(a) A person commits an offense if the person *discharges or allows the discharge* of any waste or pollutant into any water in the state that causes or threatens to cause water pollution unless the waste or pollutant is discharged in strict compliance with all required permits or with a valid and currently effective order issued or rule adopted by the appropriate regulatory agency.

Act of June 19, 1997, 75th Leg., R.S., ch. 1072, § 2, 1997 Tex. Gen. Laws 1876 (amended 2005) (current version at Tex. Water Code Ann. 7.147(a)(1) (Vernon Supp.2006)) (emphasis added).[1]

Appellant filed a motion to quash the information, arguing that the information failed to "allege in specific terms the manner and means [appellant] acted in violation of the statute." In response, the State filed a motion to amend the information to include the definition of "discharge." Under the Texas Water Code, "discharge" means "to deposit, conduct, drain, emit, throw, run, allow to seep, or otherwise release or dispose of, or to allow, permit, or suffer any of these acts or omissions." Tex. Water Code Ann. 26.001(19) (Vernon 2000).

The trial court granted the State's motion to amend and denied appellant's motion to quash. After amendment, the information contained the following language:

... that in Harris County, Texas, VALERO REFINING–TEXAS L.P., hereafter styled the Defendant, heretofore on or about SEPTEMBER 25, 2002, did then and there unlawfully, discharge or allow the discharge of a waste or pollutant, namely, INDUSTRIAL WASTE AND/OR OTHER WASTE AND/OR A PETROLEUM HYDROCARBON SUBSTANCE AND/OR OIL, into water in the State, namely SIMS BAYOU AND/OR THE HOUSTON SHIP CHANNEL, that caused or threatened to cause water pollution, said discharge not being in strict compliance with a required permit or with a valid and currently effective order issued or rule adopted by the appropriate regulatory agency, namely, the Texas Commission on Environmental Quality, *and the Defendant discharged or allowed the discharge of the waste or pollutant by depositing, draining, emitting, or otherwise releasing the waste or pollutant, and/or by allowing the depositing of, the draining of, or the emitting of the waste or pollutant, or by allowing the waste or pollutant to*

---

1. Section 7.147 was amended after the date of the charged offense to create an additional exception. *See* Tex. Water Code Ann. § 7.147(a) (Vernon Supp.2006). However, the portion of the statute applicable to appellant remained unchanged. *See id.* Thus, for convenience, we will cite to the current code.

*seep, or by otherwise allowing the release of the waste or pollutant.*

(emphasis added).

Appellant filed a second motion to quash the amended information, claiming the information as amended failed to provide notice sufficient to allow appellant to prepare its defense and plead the judgment as a bar to future prosecution of the same offense. Appellant also claimed that the information alleged an omission without alleging a legal duty to act. The trial court did not rule on appellant's second motion to quash.

Appellant then filed a "Supplemental Motion to Quash and Declare Section 7.147 of the Texas Water Code Unconstitutional as Applied to the Defendant." In its supplemental motion, appellant acknowledged that the information alleged appellant did "unlawfully, discharge or allow the discharge of a waste or pollutant" and conceded that the State may plead in the alternative. However, appellant argued that the information must set forth facts establishing a legal duty to act "to the extent that the State alleges [appellant's] offense results from some failure to act that allowed the discharge to occur."

The trial court denied appellant's supplemental motion. On the same day, pursuant to a plea bargain, the State agreed to amend the information by striking the words "discharge or."[2] Thus, the information after the agreed amendment charged appellant solely with allowing the discharge of certain wastes and pollutants. Appellant pled nolo contendre to the information as amended under the plea agreement, and the trial court assessed punishment at a fine of $50,000.

## II. DISCUSSION

In its sole issue, Valero contends the trial court erred by denying its motion to quash the information. We review a trial court's ruling on a motion to quash de novo. *State v. Moff*, 154 S.W.3d 599, 601 (Tex.Crim.App.2004).

■ A criminal defendant has a constitutional right to be informed of the nature and cause of the accusation against him. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Under the Texas Constitution, the charging instrument must provide fair notice, in plain and intelligible language, of the act or omission alleged. *See* TEX. CONST. art. I, § 10; *Riney v. State*, 28 S.W.3d 561, 565 (Tex.Crim.App.2000). However, if a defendant fails to object to defects in the charging instrument of either form or substance, he waives any error on appeal. TEX.CRIM. PROC.CODE ANN. 1.14(b) (Vernon 2005); *Sanchez v. State*, 120 S.W.3d 359, 363–67 (Tex.Crim.App. 2003). Because appellant agreed to the complained-of language as a condition of its plea bargain, its argument on appeal that the information failed to provide fair

---

2. The State did not move to strike the words "discharged or" as alleged in the portion of the information as amended to include the definition of discharge. We also note that, although the trial court granted the State's motions, the original information was not amended to reflect either of the changes and no new or substitute information was filed. *See Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim.App.2000) (noting that a trial court's granting of the State's motion to amend a charging instrument only authorizes an eventual amendment, but holding that the "actual, physical alteration of the face of the charging instrument" is not necessarily "the only effective means of accomplishing an amendment"). Here, however, appellant and the State agree as to the substance of the changes, and neither party argues that either change is invalid or inapplicable. *See Valenti v. State*, 49 S.W.3d 594, 597–98 (Tex.App.-Fort Worth 2001, no pet.) (holding an order memorializing substance of amendment is sufficient when there is no surprise and amendment was made by agreement).

notice appears somewhat disingenuous. Arguably, appellant has waived any error. *See Beebe v. State*, 756 S.W.2d 759, 760–61 (Tex.App.-Corpus Christi 1988), *aff'd* 811 S.W.2d 604 (Tex.Crim.App.1991) (holding appellant failed to preserve error because he did not object to the indictment as amended after his motion to quash); *Neloms v. State*, 740 S.W.2d 104, 107 (Tex. App.-Amarillo 1987, no pet.) (same).

Appellant apparently contends that striking the words "discharge or" from the information was not an amendment but "merely an abandonment of one of the ways and means by which the offense could be committed." *See Yates v. State*, 766 S.W.2d 286, 290 (Tex.App.-Dallas 1989, pet. ref'd); *see also Eastep v. State*, 941 S.W.2d 130, 133–34 (Tex.Crim.App.1997). Because the State abandoned the language alleging a "discharge," appellant contends it has shown its conviction rested upon the challenged theory—that is, appellant was convicted solely for "allowing" a discharge. *See Am. Plant Food Corp. v. State*, 508 S.W.2d 598, 601 (Tex.Crim.App.1974) (noting that when a challenged element is listed disjunctively, appellant must "show that its case was tried and submitted upon this [the challenged] theory"). However, even assuming appellant properly preserved error, we conclude that the trial court did not err by denying its motion to quash.

## A. Failure to Allege an Offense

■ Appellant first claims that the State failed to allege an offense in its information. Appellant argues that the State charged appellant with an omission under 7.147 of the Texas Water Code when there was no concomitant statutory duty to act. Therefore, appellant contends the State omitted an element necessary to constitute the offense. *See Ronk v. State*, 544 S.W.2d 123, 125 (Tex.Crim.App.1976) (holding that an information is fundamentally defective if the State alleges an omission without a concomitant duty to act). An information that tracks the statutory language of a statute proscribing certain conduct is generally sufficient to charge a criminal offense. *State v. Edmond*, 933 S.W.2d 120, 127 (Tex.Crim.App.1996). As explained below, we conclude the legislature, by employing the word "allow," created a positive duty on persons standing in a responsible relation to the prohibited act of unauthorized discharge to act to prevent a violation of section 7.147 of the Texas Water Code. Therefore, the State sufficiently alleged a statutory duty to act by tracking the language of section 7.147.

■ Central to appellant's complaint is the argument section 7.147 of the Texas Water Code is unconstitutionally vague as applied. An unconstitutionally vague criminal law "violates the first essential of due process." *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.Crim.App.1989) (citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). A statute is unconstitutionally vague if it (1) does not provide fair notice of the prohibited conduct to a person of ordinary intelligence, or (2) is so indefinite that it encourages arbitrary and discriminatory arrests and convictions. *See id.* In reviewing the constitutionality of a statute for vagueness, we must consider, not whether the statute can withstand the deconstructionist attacks of attorneys, but whether the statute provides fair notice to an ordinary person that his or her conduct risked violating a criminal law. *See id.*

■ We begin with the presumption that the statute is valid and assume the legislature did not act arbitrarily and unreasonably when it was enacted. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim.App.1978). The burden rests on appellant to establish a statute is unconstitutionally vague as applied to its conduct.

*See Bynum,* 767 S.W.2d at 774; *Briggs v. State,* 740 S.W.2d 803, 806 (Tex.Crim.App. 1987).

Appellant cites *Billingslea v. State,* in which the Court of Criminal Appeals observed "penal provisions which criminalize a failure to act without informing those subject to prosecution that they must perform a duty to avoid punishment are unconstitutionally vague." 780 S.W.2d 271, 275–76 (Tex.Crim.App.1989). In relevant part, the statute at issue in *Billingslea* provided that a person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes injury to an individual who is 65 years of age or older. *See id.* at 273. The defendant in *Billingslea* was convicted for violating the statute by failing to obtain medical care for his elderly mother. *Id.* The court of appeals reversed the conviction and ordered his acquittal. *Id.* at 271. In affirming the judgment of the court of appeals, the Court of Criminal Appeals noted that, because no duty of care had been assigned to any particular person, the duty "must therefore rest on either all persons alive ... or on no one." *Id.* at 276. If such a duty rested "on all persons alive," there would be no rational means of choosing to prosecute "B for the death of A instead of prosecuting X, a neighbor, or Y, A's sister, or Z, the Governor." *See id.* Thus, the court held no such duty of care existed. *Id.* Appellant argues that section 7.147 of the Water Code, like the statute in *Billingslea,* creates a duty that rests either on all persons or on no one. We disagree.

Unlike the statute at issue in *Billingslea,* the Texas Water Code is a regulatory act of "a now familiar type which dispenses with the conventional requirement for criminal conduct-awareness of some wrongdoing." *See United States v. Park,* 421 U.S. 658, 668, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975) (internal quotations omitted); *see also Am. Plant Food Corp. v. State,* 587 S.W.2d 679, 684–86 (Tex. Crim.App.1979) (noting the strict-liability nature of the provisions concerning water pollution). Instead, "[i]n the interest of the larger good, it puts the burden of acting at hazard upon a person otherwise innocent but standing *in a responsible relation* to a public danger." *Park,* 421 U.S. at 668, 95 S.Ct. 1903 (emphasis added); *see United States v. Dotterweich,* 320 U.S. 277, 280–81, 64 S.Ct. 134, 88 L.Ed. 48 (1943); *Am. Plant Food Corp.,* 587 S.W.2d at 686 (determining the legislature "recognized the substantial risks to public health involved in even passive pollution" and eliminated the requirement of a culpable mental state to further its intent).

■■■ With respect to strict-liability regulatory statutes of this nature, it is well settled that an omission or failure to act is a sufficient basis for a responsible corporate agent's (or corporations's) liability. *Park,* 421 U.S. at 671, 95 S.Ct. 1903; *see Dotterweich,* 320 U.S. at 281, 64 S.Ct. 134 (describing the relationship between a corporation and its agents and noting a corporation can only act through the individuals who act on its behalf). It is enough that, by virtue of the responsibility vested in a corporation or its agents, the corporation or agent charged "had the power to prevent the act complained of." *See Park,* 421 U.S. at 671–72, 95 S.Ct. 1903. By the use of the word "allow," the legislature incorporated this responsible-relationship concept directly into the language of section 7.147 of the Texas Water Code.[3]

---

**3.** Although *Park* and *Dotterweich* do not address the precise issue presented in this case, we find the reasoning in both cases applicable here. In *Park* and *Dotterweich,* the statutory

The term "allow" is not defined by statute; therefore, we must interpret the term in accordance with its plain meaning and ordinary usage. *See Sanchez v. State*, 995 S.W.2d 677, 683 (Tex.Crim.App.1999) (citing *Boykin v. State*, 818 S.W.2d 782, 785–86 & 786 n. 4 (Tex.Crim.App.1991)). The plain meaning of "allow" is "to let do or happen; permit." AMERICAN HERITAGE DICTIONARY (4th ed.2000); *see State v. Guevara*, 110 S.W.3d 178, 180–81 (Tex.App.-San Antonio 2003), *rev'd* 137 S.W.3d 55 (Tex.Crim.App.2004) (stating commonly used meaning of "to allow" is to "neglect to restrain or prevent"). Implicit in the meaning of the word "allow" is that the actor must bear a responsible relationship to the object that he or she "allows." In other words, it is impossible to "allow" something beyond one's control. Thus, we conclude section 7.147 imposes a duty on those who have a "responsible relationship

to" or a "responsible share in" the prohibited act-here, the unauthorized discharge. *See Park*, 421 U.S. at 672–73, 95 S.Ct. 1903. Responsible persons, whether an individual, association, or corporation, have a positive duty under section 7.147 to "seek out and remedy violations when they occur but also, and primarily, a duty to implement measures that will insure that violations will not occur." *See id.; see also Dotterweich*, 320 U.S. at 281–85, 64 S.Ct. 134 (discussing the relationship between a corporation and its individual employees).[4]

Unlike the duty of care at issue in *Billingslea*, not "all living persons" possess the power or authority to prevent any given discharge. Nonetheless, appellant argues that section 7.147 is unconstitutionally vague because it does not explicitly limit its application to a particular class. *See* TEX. WATER CODE ANN. § 7.147 ("a person commits an offense ..."); TEX.

provisions at issue did not explicitly prohibit an omission or failure to act. *See Park*, 421 U.S. at 660 n. 2, 95 S.Ct. 1903 (provision at issue prohibited "[t]he alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of ... or ... any other act with respect to, a food, drug, device, or cosmetic ..." and the causation of any of the preceding acts); *Dotterweich*, 320 U.S. at 278, 64 S.Ct. 134 (provision at issue prohibited "[t]he introduction or delivery for introduction into interstate commerce of any ... drug ... that is adulterated or misbranded"). Nonetheless, the Court rejected the due process claims and construed the provisions to impose a positive duty upon responsible persons "to seek out and remedy violations when they occur but also, and primarily, a duty to implement measures that will insure that violations will not occur." *See Park*, 421 U.S. at 666, 672–73, 95 S.Ct. 1903 (describing the duty revealed in the aftermath of *Dotterweich* by cases construing similar regulatory statutes). Thus, regulatory statutes which facially prohibit acts alone are constitutional as applied to those responsible persons who fail to prevent the proscribed acts. *See id.* In light of the foregoing, it would be a perversion of law and logic to conclude that use of

language such as "allow" on the face of a similar regulatory statute renders the statute unconstitutional. As discussed above, unconstitutionally vague statutes violate due process because they fail to provide notice of prohibited conduct to citizens and law enforcement officials. A regulatory statute which includes language such as "allow" on its face provides greater notice that a person may be held liable for failing to prevent a violation than a statute which dispenses with such language.

4. In *Dotterweich*, the court rejected an argument that a statute applying to any "person," when "person" was defined to include a "corporation," could not be enforced against responsible corporate agents. *Dotterweich*, 320 U.S. at 281, 64 S.Ct. 134. To the extent appellant's argument relies on the reverse proposition-that a duty imposed on responsible corporate agents cannot also be imposed on a corporation itself, we reject the argument for the same reasons. A "corporation" (defined by the penal code to include professional associations created by statute) cannot act apart from the individuals who act on its behalf. *Dotterweich*, 320 U.S. at 281, 64 S.Ct. 134; *see* TEX. PEN.CODE ANN. § 1.07(13) (Vernon 2003).

PEN.CODE ANN. 1.07(38) (Vernon 2003) (defining person to include an individual, corporation, or association). Appellant cites *State v. Guevara* for the proposition that a statute criminalizing an omission must expressly define the class of persons which stands in a responsible relation to prevent the complained-of act. 137 S.W.3d 55 (Tex.Crim.App.2004). In *Guevara,* the Court of Criminal Appeals upheld an ordinance making it unlawful for businesses "to allow" patrons to queue on the public right-of-way of the San Antonio River Walk. *Id.* at 57. In distinguishing its holding in *Billingslea,* the Court noted that the River Walk ordinance specifically limited the duty in its application to businesses along the River Walk. *Id.* However, with respect to the type of regulatory crime at issue here, it would be "treacherous to define or even to indicate by way of illustration" the class which stands in such a responsible relationship. *See Dotterweich,* 320 U.S. at 281, 285, 64 S.Ct. 134 (discussing the application of a regulatory statute which applied to "any person"); *cf. id.* at 287, 64 S.Ct. 134 (Murphy, J., dissenting) (disagreeing with the majority's holding because "[s]tatutory policy and purpose are not constitutional substitutes for the requirement that the legislature specify with reasonable certainty those individuals it desires to place under the interdict of the Act").

Moreover, there is no indication here that appellant was outside of the class of persons who stood in a responsible relation to the complained-of discharge. Although appellant argues that any man, woman, or child may be held liable for the discharge of another person, there is no evidence in appellant's case that the discharge originated from a third-party source. When, as here, the right to free speech under the First Amendment to the United States Constitution is not implicated, a defendant challenging the constitutionality of a stat-

ute for vagueness must show that the statute is unconstitutional as applied to the specific facts of the case. *See Bynum,* 767 S.W.2d at 773–74. It is not enough to show that the statute may be unconstitutional as applied in other situations; we do not engage in hypothetical analysis to determine whether the statute provides adequate notice. *See Margraves v. State,* 34 S.W.3d 912, 920 (Tex.Crim.App.2000); *Bynum,* 767 S.W.2d at 774. Appellant has failed to present a record containing a statement or findings of fact which indicate appellant, a refining company, bore no responsible relationship to the complained-of discharge and was therefore outside the class of persons whose conduct is clearly proscribed by the statute. *See Griffin Indus. v. State,* 171 S.W.3d 414, 417–19, 417 n. 4 (Tex.App.-Corpus Christi 2005, pet. ref'd) (rejecting a similar hypothetically-based argument that "discharge," as defined to include allowing or permitting the release of a pollutant, is unconstitutionally vague); *see also DeWillis v. State,* 951 S.W.2d 212, 217 (Tex.App.-Houston [14th Dist.] 1997, no writ) (rejecting appellant's claim a statute was unconstitutionally vague as applied when appellant failed to bring forth a record containing the facts surrounding his conduct).

 Finally, appellant argues that "the relevant omissions [from the information] in [appellant's] case are the [omissions] that the State believe allowed the discharge." However, it is not necessary or desirable for the State to codify the different methods or systems a person could employ to prevent an unauthorized discharge, and the fact that the statute did not prescribe a specific method does not render it unconstitutionally vague in application. *See Guevara,* 137 S.W.3d at 57–58 (finding it was not necessary or desirable for the city to codify the various different

**564**

methods a business could use to prevent queuing).

For the reasons discussed above, appellant failed to meet its burden to show section 7.147 of the Texas Water Code was unconstitutionally vague as applied-and thus failed to rebut the presumption the statute is constitutional. By tracking the language in section 7.147 of the Texas Water Code, the State sufficiently alleged that appellant bore a responsible relationship to the complained-of discharge; therefore, appellant had a duty to prevent the discharge. Accordingly, we conclude the information was not void for failure to allege an offense. *See Edmond,* 933 S.W.2d at 127 (information tracking statutory language generally sufficient to allege an offense).

**B. Failure to Provide Sufficient Notice**

Because the State did not specify the precise omissions constituting unauthorized discharge, appellant further argues that it did not have sufficient information to prepare a defense and plead the judgment in bar of future prosecutions. When the State fails to allege facts sufficient to give a defendant notice of the precise offense charged and to bar subsequent prosecutions for the same offense, the defect is one of form. *Sanchez,* 120 S.W.3d at 367 (citing *Adams v. State,* 707 S.W.2d 900, 901 (Tex.Crim.App.1986)); *Am. Plant Food Corp.,* 508 S.W.2d at 603–604. When a trial court errs in overruling a challenge to the form of the charging instrument, a conviction may be affirmed if the defect did not prejudice the defendant's substantial rights. *Sanchez,* 120 S.W.3d at 367; *see* Tex.Crim. Proc.Code Ann. 21.19 (Vernon 1989) ("An indictment shall not be held insufficient ... by reason of any defect of form which does not prejudice the substantial rights of the defendant"). Therefore, we apply a two-part

test. *Sanchez,* 120 S.W.3d at 367. First, we determine whether the charging instrument failed to convey a requisite item of notice. *Id.* If so, we next determine whether in the context of the case, this had an impact on the defendant's ability to prepare a defense, and finally, how great an impact. *Id.*

Here, the State alleged the date of the discharge, the site of the discharge, and the type of pollutants and waste. Accordingly, we find that the State alleged facts sufficient for appellant to prepare a defense and plead the judgment in bar of future prosecution. Moreover, no court reporter was present at the hearing on the motion to quash, there are no findings of facts, and appellant expressly agreed to the subject amendment as a condition to its plea bargain. Therefore, even if the State failed to convey a requisite item of notice, we cannot conclude that appellant's substantial rights were prejudiced. *See* Tex.Crim. Proc.Code Ann. 21.19; *Sanchez,* 120 S.W.3d at 367.

Accordingly, we overrule appellant's sole issue. The judgment of the trial court is affirmed.