IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1085-03




 


THE STATE OF TEXAS



v.



RACHEL GUEVARA, Appellee





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY





 Keller, P.J., delivered the opinion for a unanimous Court.


O P I N I O N 



 This case involves an ordinance designed to maintain the free flow of pedestrian traffic on the San
Antonio River Walk. One way the ordinance accomplishes this is by making it unlawful for a business to
allow patrons to queue on, or wait for entrance into that business establishment on the public right-of-way
of the River Walk area. (1) Under the ordinance "queue" means "to form a line or arrange in a line." (2) We
granted review to answer the following question: Is an ordinance that penalizes a business establishment
for allowing queuing unconstitutionally vague because it fails to specify methods that could be used to
prevent queuing? We answer that question "no."

A. Background


 Park Ranger Fidencio Castillo was patrolling the east side of the river when he noticed people
beginning to line up outside of Café Ole. He warned the hostess that the line needed to be moved and was
assured that it would be taken care of. But about thirty minutes later the line was still there, with the same
people waiting in line. Castillo issued a citation. When he returned later that evening, there was no line
outside the restaurant.

 Appellee was found guilty by the municipal court and ordered to pay a $100 fine. She appealed
to the county court, where the case was submitted on the record made in municipal court, on briefs, and
on oral argument. The county court found that appellee was not guilty of violating the ordinance, that the
ordinance was unconstitutional and unenforceable, and that the map referred to in the ordinance was vague
and did not clearly define the area intended to be designated as a public right-of-way. The State appealed.

 The Court of Appeals noted that appellee made no complaint about the definitions of "business
establishment," "queue," "right of way," and "River Walk Area." (3) Rather, appellee complained that the
ordinance failed to describe with reasonable certainty what actions constitute allowing patrons to queue on
the public right-of-way and that the phrase "to allow" is insufficient to establish intent for the purpose of
charging a person with a penal offense. (4)

 The Court of Appeals observed that appellee was charged with a crime of omission - failing to
prevent patrons from queuing. (5) To determine whether the ordinance proscribed an omission with sufficient
clarity to avoid a vagueness challenge, the court looked to our opinion in Billingslea v. State, which held
that there must exist a statutory duty to act apart from a mere general statement that "an omission is an
offense." (6) The court found that the ordinance ran afoul of Billingslea's requirement because it did not
"affirmatively impose on those subject to it the duty to adopt a particular system to prevent the queuing of
patrons waiting for tables" nor did it "require those subject to the ordinance to adopt any system at all or
otherwise inform them how they are to prevent queuing." (7)

B. Analysis


 In Billingslea, the defendant lived in a house with his ninety-four year old mother. (8) He was 
prosecuted for injury to an elderly person by omission for failing to secure needed medical care. (9) At the
time, the "injury to a child or elderly individual" statute provided:

A person commits an offense if he intentionally, knowingly, recklessly, or with criminal
negligence, by act or omission, engages in conduct that causes to a child who is 14 years
of age or younger or to an individual who is 65 years of age or older:


(1) serious bodily injury;


(2) serious physical or mental deficiency or impairment;


(3) disfigurement or deformity;


(4) bodily injury. (10)


We began our analysis by holding that a statute could not effectively designate an omission as an offense
simply by stating "an omission is an offense." (11) Rather, for an omission to be an offense, "there must be
a corresponding duty to act." (12) This duty to act could be contained within the same statute that proscribes
the offense, as was the case for offenses such as interference with child custody, criminal nonsupport, and
permitting or facilitating escape. (13) Or the duty to act could be found in a different statute, as was the case
with the duty to provide a child with food, shelter, and medical care. (14) 

 The "injury to a child or elderly individual" statute did not itself assign a duty of care to any
particular person. (15) Unless one wanted to contend that the statute impliedly imposed upon every living
person in the universe a duty to protect a child or elderly person from harm, the failure to assign a duty of
care to any particular class of individuals meant the statute had not assigned a duty to anyone. (16) We
concluded that we would have to look outside the "injury to a child or elderly individual" statute to find a
duty to act. (17) For children, that duty could be found in the Family Code. (18) But no statutory duty of care
for elderly persons existed, and we specifically rejected deriving duties from the common law. (19) 
Consequently, the State failed to establish the offense of injury to an elderly individual by omission because
it could not show that the defendant had a duty to act. (20) We noted, however, that the Legislature had
recently amended the "injury to a child or elderly individual" statute to impose a duty to care for an elderly
person when the actor had assumed care, custody, or control of the elderly individual. (21) 

 We agree with the Court of Appeals that the Billingslea analysis applies here. But the ordinance
before us is not like the statute in Billingslea. The statute in Billingslea did not restrict its application to
those who had a duty to care for an elderly individual. It imposed a duty, if at all, upon "every living person
in the universe." 

 The ordinance here is more like those statutes that we contrasted to the statute in Billingslea. For
instance, in the statute proscribing permitting or facilitating escape, "an official or an employee that is
responsible for maintaining persons in custody commits an offense if he...permits or facilitates the escape
of a person in custody." (22) The ordinance in question here imposes a duty to prevent queuing upon a
specific class of entities, businesses with entrances along the River Walk area, and then proscribes violation
of that duty. (23)

 The fact that the ordinance did not suggest a method of preventing queuing is of no significance. 
Neither do the statutes proscribing permitting escape or interfering with child custody specify the method
by which to avoid committing those offenses. (24) There are common-sense methods for preventing queuing, (25)
and it is not necessary or desirable to require the City to codify those methods. 

 We reverse the Court of Appeals's decision and remand the case for further proceedings consistent
with this opinion.

 KELLER, Presiding Judge

Date delivered: June 9, 2004

Publish
1. City of San Antonio Code §22-140.
2. §22-138.
3. State v. Guevara, 110 S.W.3d 178, 180 (Tex. App.-San Antonio 2003).
4. Id.
5. Id. at 181.
6. Id. (quoting and citing Billingsley v. State, 780 S.W.2d 271, 274-276 (Tex. Crim. App.
1989)).
7. Guevara, 110 S.W.3d at 181.
8. Billingslea, 780 S.W.2d at 272.
9. Id. at 273 n. 2.
10. Billingslea, 780 S.W.2d at 273 (quoting TEX. PEN. CODE §22.04(a)).
11. Id.
12. Id.
13. Id.
14. Id. at 275.
15. Id. at 276.
16. Id.
17. Id. at 274.
18. Id. at 275.
19. Id. at 275-276.
20. Id. at 276.
21. Id. at 276, 276 n. 7.
22. Id. at 274 (quoting TEX. PEN. CODE §38.08)(emphasis in Billingslea; ellipsis inserted).
23. City of San Antonio Code §22-138.
24. See Billingslea, 780 S.W.2d at 274; TEX. PEN. CODE §§38.08 (penalizing an institution
official who "permits . . . the escape of a person in custody"; no suggested procedures for preventing
escapes), 25.03 (penalizing a person who "retains . . . a child younger than 18 years" when he knows
that retention violates a court order; no suggested procedures for returning a child to rightful custody).
25. Castillo testified that other River Walk business establishments prevent queuing "by giving
patrons a pager, moving them into a bar or other waiting area, or giving them a specific time to return to
claim their table." Guevara, 110 S.W.3d at 180.