**UNIVERSITY PREPARATORY SCHOOL, Appellant,**

v.

**William HUITT, III and Barbara Huitt, individually and as next friend of Marc Huitt, Appellees.**

No. 13–94–439–CV.

Court of Appeals of Texas, Corpus Christi.

Sept. 26, 1996.

Rehearing Overruled Jan. 9, 1997.

Robert J. Banks, Harlingen, for appellant.

Jeffrey L. Jackson, San Benito, for appellee.

Roger W. Hughes, Craig H. Vittitoe, Adams & Graham, Harlingen, ad litem.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

Fourteen-year-old Marc Huitt was seriously injured when he fell from a balcony at his school. Huitt's parents sued the school and several students who had allegedly encouraged Huitt to climb up on the balcony and to jump from it into the school swimming pool. The Huitts alleged that the school negligently supervised the pool area and that the other students negligently caused Huitt to fall. Student Eric Booth settled with the Huitts before jury selection. Students William Lyford and Charles Blakey were nonsuited before the case was submitted to the jury. The jury found Huitt and the school partially negligent. The trial court then entered judgment for the Huitts, giving the school a percentage credit because of Booth's settlement. The school appealed. We affirm.

The facts show that on September 21, 1992, Huitt was about three weeks into his first semester at University Preparatory School. During his lunch break, Huitt went to the pool where upper classmen Booth, Lyford, Blakey and others were playing. No lifeguard was on duty. Mark Paschall, the teacher assigned to supervise the lunch period, was present in a nearby office where he could not see, but should have been able to hear, activity at the pool. At some point, the upper classmen started to jump into the pool from the fire escape balcony of a classroom building adjacent to the pool. Huitt had seen these students jump off the balcony into the pool on other days. Student Eric Booth testified that such activity occurred frequently, although it was against school rules. School officials had warned students not to engage in this activity.

Just prior to Huitt's fall, Jo Ellen Paschall, the school administrator, had been in the office with Mark Paschall and heard a large splash. She suspected that someone had jumped off the balcony. She went to the pool, but the students denied that anyone had jumped. She warned the students that anyone who jumped off the balcony would be sent home. Paschall left the pool area. Despite her warning, the students resumed jumping from the balcony. At some point, the upper classmen enticed Huitt to climb the fire escape. Huitt fell from the balcony onto the concrete patio below after climbing on top of the fire-escape-balcony railing.

The case was submitted to the jury on negligence issues. The trial court also submitted a question concerning Huitt's status as a trespasser on the balcony. The jury found the school 70% negligent and Huitt 30% negligent, and it found that Huitt was a trespasser. The Huitts then filed a motion to disregard the jury finding that Huitt was a trespasser and requested the court to enter judgment on the negligence findings. The trial court heard argument on the Huitts' motion and entered judgment for the Huitts.

In points of error one and two, the school presents various reasons why the judgment should be reversed. The school contends that the evidence was legally and factually insufficient to establish that (1) the school should have foreseen that Huitt would climb the fire escape and attempt to jump into the pool and (2) the school's negligence, if any, was the proximate cause of Huitt's injuries. The school also claims it had no duty to control Huitt's conduct, was not required to foresee his negligent conduct, and discharged any duty to Huitt by posting and generally enforcing pool rules. Finally, the school argues that the case should have been submit-

ted to the jury only on a premises liability theory.

The school's duty, foreseeability, proximate cause, premises liability and evidentiary arguments are intertwined and can be addressed together. Essentially, the school contends that it owed Huitt no duty other than that owed to a trespasser, and, even if it did owe Huitt some duty, then the evidence shows that it either discharged its duty or was absolved of responsibility because of Huitt's own negligent conduct.

We reject the school's argument that it owed Huitt no duty beyond that which it owed to a trespasser. Huitt was a student at the school, was injured during the school day, on school property, during a time when the school had accepted responsibility for supervising its students. Various cases lead us to conclude that, under such circumstances, a school has the duty to reasonably care for the well-being and safety of its students. *See Goston v. Hutchison,* 853 S.W.2d 729, 733 (Tex.App.—Houston [1st Dist.] 1993, no writ)(court implies existence of cause of action for negligent supervision against public school but for immunity of Tort Claims Act); *Smith v. University of Texas,* 664 S.W.2d 180, 188 (Tex.App.—Austin 1984, writ ref'd n.r.e.)(negligent supervision of shot-put area found to be viable cause of action against university); *Sewell v. London,* 371 S.W.2d 426, 427 (Tex.Civ.App.—Texarkana 1963, no writ)(teacher failed to adequately warn or supervise student in building trades class). Under the facts, the school was required to reasonably supervise the behavior of its adolescent pupils.

Having determined that the school had this duty, we must determine whether the evidence is factually and legally sufficient to support the jury's negligence findings. In reviewing legal insufficiency, we examine only the evidence and inferences tending to support the jury's findings and disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex. 1987). When reviewing factual sufficiency points, we examine the entire record to determine if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

The school claims lack of evidence of foreseeability and proximate cause. The two elements of proximate cause are cause in fact and foreseeability of risk. *City of Gladewater v. Pike,* 727 S.W.2d 514, 517 (Tex.1987). Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). Foreseeability does not require the actor to anticipate the precise manner in which injury will occur. *Id.* All that is required is that the injury be of such a general character as might reasonably have been anticipated, and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 551 (Tex.1985).

The evidence shows that at least three students frequently jumped into the swimming pool from the fire escape balcony, that this activity was against school rules, and that the students had been warned by Jo Ellen Paschall not to jump from the balcony. In addition, there is evidence that, before the incident, Huitt's mother had complained to Jo Ellen Paschall that some boys were trying to initiate Huitt by encouraging him to jump off a balcony.

Jo Ellen Paschall testified that she had never seen anyone jump, but she knew of one instance, a number of years ago, when someone supposedly jumped off the balcony into the pool. On the day Huitt was injured, she heard a large splash, went to the pool and warned her students that if they jumped off the balcony, they would be suspended. After warning the students, she left the pool area. Jo Ellen Paschall conceded that the incident would not have occurred if a teacher had been at the pool.

Thus, there is evidence that the jumping which occurred on the day Huitt was injured was not an isolated event, that the school knew Huitt had been specifically enticed to jump from the balcony, and that the school

was at least aware of possible balcony jumping. Further, there is evidence that just prior to the injury, Jo Ellen Paschall suspected that her students were balcony jumping and warned students against jumping. We find that this evidence demonstrates that Paschall perceived the risk to the students, even though she had never seen anyone jump.

The facts further show that Jo Ellen Paschall left the pool area after warning the students not to jump, and that Mark Paschall remained in the school office where he had no view of the pool. There is evidence, of course, that Jo Ellen Paschall warned the students not to jump. Nonetheless, we find the evidence factually and legally sufficient to support the jury's implicit finding that the school failed to adequately supervise the students in the pool, and that this lack of supervision caused Huitt's injuries.

▉ The school also argues that because the evidence shows that Huitt willingly climbed the fire escape to jump, it is absolved of liability. We disagree. It is not uncommon for children of Huitt's age to willingly or intentionally engage in conduct that, if left unsupervised, would be harmful. It is for this reason that the school has a duty to reasonably supervise its students.

▉ The school contends further that the trial court erred by not submitting the case on a premises liability theory. We disagree. If negligent activity is raised by the evidence, general negligence instructions are proper. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992); *Texas Dept. of Transportation v. Ramming*, 861 S.W.2d 460, 464–65 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Huitt's theory of recovery was that his injury occurred because of the school's contemporaneous failure to supervise the pool. This failure to supervise is a negligent activity theory, not a premises liability theory, and so the trial court correctly refused to submit the case on a premises liability theory. Points one and two are overruled.

1. The general negligence question asked whether the negligence of various named persons caused Huitt's injuries. Two other questions asked the jury to apportion percentages of negligence.

▉ By point three, the school claims the trial court erred by denying its requested special issue on new and independent cause. Submission of questions to the jury is reviewed under an abuse of discretion standard. *Southwest Airlines Co. v. Jaeger*, 867 S.W.2d 824, 832 (Tex.App.—El Paso 1993, writ denied). The trial court, however, should not submit inferential rebuttal issues. Tex.R. Civ. P. 277; *Perez v. Weingarten Realty Investors*, 881 S.W.2d 490, 495–96 (Tex.App.—San Antonio 1994, writ denied). The school's requested special issue asked:

Do you find from a preponderance of the evidence that the actions of Marc Huitt, Ben Lyford, Charles Blakey or Eric Booth were new and independent causes of Marc Huitt's injuries as relating to the acts of University Preparatory School?

This question inferentially rebuts the general negligence question and, therefore, was properly denied.[1] *Orkin Exterminating Co. v. Davis*, 620 S.W.2d 734, 737 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.). Point three is overruled.

By point four the school complains that the trial court erred in applying a percentage credit instead of a dollar-for-dollar credit under § 33.012 of the comparative responsibility statute. Act of Sept. 2, 1987, 70th Leg., 1st C.S., ch. 2, § 2.07, 1987 Tex. Gen. Laws 71, 80 (amended 1995) (current version at Tex. Civ. Prac. & Rem.Code Ann. § 33.012 (Vernon Supp.1996)).[2]

Under the statute, if a claimant settles with anyone, the court shall reduce the amount of damages to be recovered by the claimant by either a dollar-for-dollar amount or by a statutorily set percentage of the damages, at the defendant's election. § 33.012(b). An "election shall be made by any defendant filing a written election before the issues of the action are submitted to the trier of fact and, when made, shall be binding on all defendants. If no defendant makes this election or if conflicting elections are made, all defendants are considered to have elected" percentage credit. § 33.014.

2. References are to the 1987 statute.

■ In the present case, Lyford filed a dollar-for-dollar election during trial. The school did not file any election. Lyford was nonsuited before the case was submitted to the jury, and so the trial court reduced damages on a percentage basis, as if no election had been made. The school contends that Lyford's election was binding on all defendants and that it should have been permitted to rely on Lyford's dollar-for-dollar election. We disagree.

Under the statute, only a "defendant" can make a binding election, and "defendant" is specifically defined in the statute. Section 33.011 provides that "in this chapter 'defendant' includes any party from whom a claimant seeks recovery of damages ... *at the time of the submission of the case to the trier of fact.*" (Emphasis ours).

In light of this definition, we conclude that Lyford was not a "defendant" within the meaning of the statute because Huitt did not seek recovery of damages from him at the time of submission of the case to the trier of fact. Because the school never filed its own election, and because no other valid election was filed, the trial court was correct in applying a percentage credit. Point four is overruled.

The trial court's judgment is affirmed.